UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAROLYN GROCE

    *Plaintiff*,

v.

DANIEL RODRIGUEZ, *et al.*,

    *Defendants*.

Civil Action No. 23-2535 (LLA)

**MEMORANDUM OPINION**

Proceeding pro se, Carolyn Groce filed this civil action against three employees of the National Gallery of Art: Daniel Rodriguez, Sarah Montgomery, and Emma Duncan (collectively, the "Gallery Employees"). The National Gallery of Art is a federal government institution established by a Joint Resolution of Congress in 1937. *See* 20 U.S.C. §§ 71-75. After certifying that the Gallery Employees were acting within the scope of their employment during the events alleged in the complaint, the United States substituted itself in as the defendant under the Westfall Act, 28 U.S.C. § 2679(d)(2), and filed a motion to dismiss. ECF No. 7. For the reasons explained below, the court will grant the motion and dismiss the complaint for lack of subject matter jurisdiction because Ms. Groce's claims are barred by sovereign immunity.

**I.    Background**

In considering the pending motion to dismiss, the court will assume that the facts alleged in Ms. Groce's complaint are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And because Ms. Groce is proceeding pro se, the court will construe her pleadings liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and review all filings, including attachments and her opposition, *Brown v.*

*Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 151-52 (D.C. Cir. 2015).  With these principles in mind, the relevant facts are as follows:

Ms. Groce, an African American woman, works as a "Supervisor/Sergeant" in the Gallery's Security Office.  ECF No. 1-2, at 1-2.  In 2021, after Ms. Groce was not selected for a job vacancy, she filed an internal equal employment opportunity ("EEO") claim.  *Id*. at 18-19.  In May and August 2021, Ms. Groce met with Mr. Rodriguez as part of the investigation, and he hand-wrote her statement.  ECF No. 9, at 2.  In October 2021, Ms. Groce met with Mr. Rodriguez and Ms. Duncan and provided an audio-recorded statement as well.  ECF No. 1-2, at 5.  In December 2021, Mr. Rodriguez provided Ms. Groce a copy of her August 2021 statement, but Ms. Groce noticed that it was missing some "relevant" information.  ECF No. 9, at 2.  When she inquired about the missing information, Mr. Rodriguez told her that Ms. Duncan and Ms. Montgomery, attorneys at the Gallery, had instructed him to exclude it.  *Id.*  Ms. Groce asked Mr. Rodriguez to amend the statement to add the missing information.  *Id.* at 2-3.  Mr. Rodriguez never followed up with Ms. Groce regarding the changes, and the investigation closed in December 2021 or January 2022.  *Id.* at 3.

In February 2022, Ms. Groce reached out to Ms. Duncan and Ms. Montgomery to ask for a copy of her statement.  ECF No. 9, at 3.  When she received it, Ms. Groce confirmed that her requested edits had not been made.  ECF No. 9 at 3.  At this time, Ms. Duncan informed Ms. Groce that portions of the October 2021 audio recording were unintelligible.  ECF No. 1-2 at 24.  Ms. Duncan offered Ms. Groce the opportunity to listen to the audio recording and fill in the missing parts of the statement, but Ms. Groce declined.  *Id.* at 25-26.

Ms. Groce brought this suit in August 2023, asking that "those individuals who knowingly violated my rights"—presumably Mr. Rodriguez, Ms. Montgomery, and Ms. Duncan, who were

2

named as defendants—"be disbarred [from] being lawyers or fired from their job for doing illegal investigative work." ECF No. 1, at 1. She also asks that they "be charged with [l]ibel." *Id.* Appended to her complaint are 161 pages of various materials, including affidavits, emails, and transcripts of the investigative audio recordings. *Id.* at 3-163.

Upon review of Ms. Groce's complaint, the United States certified under the Westfall Act that Mr. Rodriguez, Ms. Montgomery, and Ms. Duncan "were acting within the scope of their employment as employees of the United States of America at the time of the alleged incidents," ECF No. 7, at 12, and substituted itself as the defendant, ECF No. 7, at 1 n.1 (citing 28 U.S.C. § 2679(d)(2)). The United States then moved to dismiss. ECF No. 7. Because Ms. Groce is proceeding pro se, the court issued a *Fox*/*Neal* order advising her what should be included in any opposition to the motion to dismiss. ECF No. 8. Ms. Groce filed a timely opposition, ECF No. 9, and the United States filed a timely reply, ECF No. 10.

## II.     Legal Standards

The United States moves to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). ECF No. 7. The court will focus on Rule 12(b)(1) because it concludes that it lacks jurisdiction over the matter. *See Anderson v. Carter*, 802 F.3d 4, 8 (D.C. Cir. 2015) (explaining that the court cannot reach the merits of a case in the absence of jurisdiction).

As noted, when considering a motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 94. When the plaintiff is pro se, as Ms. Groce is, the court will "liberally construe[]" her filings. *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see id.* ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Estelle*, 429

U.S. at 106)). In assessing whether dismissal is warranted, a court considers all of a pro se litigant's filings, including attachments and any opposition filed. *Brown*, 789 F.3d at 151-52.

Dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) is appropriate if a claim is barred by sovereign immunity. *See Johnson v. Manzo*, No. 18-CV-2608, 2019 WL 1470991, at *2 (D.D.C. Apr. 2, 2019). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "[T]he court will not hold the United States has waived its sovereign immunity unless the waiver is 'unequivocally expressed' in an Act of Congress." *Rochon v. Gonzales*, 438 F.3d 1211, 1215 (D.C. Cir. 2006) (quoting *Hubbard v. EPA*, 982 F.2d 531, 532 (D.C. Cir. 1992)).

### III.  Discussion

The court concludes that the United States' Westfall Act certification was improper, but it will nevertheless dismiss the action because Ms. Groce's claims against Mr. Rodriguez, Ms. Montgomery, and Ms. Duncan are barred by sovereign immunity.

#### A.  The United States' Westfall Act Certification is Improper

The court first addresses whether the United States is the proper defendant in this case, because Ms. Groce disputes the United States' substitution for the individual defendants under the Westfall Act. ECF No. 9, at 1 n.1. When it applies, the Westfall Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties." *Wuterich v. Murtha*, 562 F.3d 375, 380 (D.C. Cir. 2009) (quoting *Osborn v. Haley*, 549 U.S. 225, 229 (2007)). While the certification is subject to judicial review, the government's certification "constitute[s] *prima facie* evidence that the employee was acting within the scope of his employment." *Id.* at 381 (quoting *Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006) (per curiam)). "To rebut the certification . . . , a plaintiff must

'alleg[e] sufficient facts that, taken as true, would establish that the defendant[s'] actions exceeded the scope of [their] employment.'" *Id.* (quoting *Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003)).

In challenging the Westfall Act certification, Ms. Groce argues that "[t]he defendants weren't acting in the scope of their duties" and laments that "[i]t's sad that they commit crimes and get away with doing things illegal[ly] and then have the court to defend their action." ECF No. 9, at 1 n.1. These are not statements of fact, but legal conclusions and opinion, which the court need not credit. *See Iqbal*, 556 U.S. at 678. Based on Ms. Groce's arguments alone, the court is not convinced that the Westfall Act certification was inappropriate.

The court, however, independently concludes that the Westfall Act certification was improper because Ms. Groce is not seeking monetary damages for her claims, but instead injunctive relief in the form of having Mr. Rodriguez, Ms. Montgomery, and Ms. Duncan "disbarred" and "fired."[1] ECF No. 1, at 1. As the court explained in *Vanover v. Hantman*, 77 F. Supp. 2d 91 (D.D.C. 1999), *aff'd* 38 F. App'x 4 (D.C. Cir. 2002), the Federal Tort Claims Act ("FTCA") (of which the Westfall Act is a part) "is the exclusive remedy for any *damages* claim arising out of the 'negligent or wrongful acts or omissions' of federal employees done while acting within the scope of their employment." *Id.* at 97 (emphasis added) (brackets omitted) (quoting 28 U.S.C. § 2679). Thus, Westfall Act "substitution is appropriate insofar as [a] plaintiff's claim seeks *damages*," but "it is inappropriate insofar as [the] plaintiff's claim seeks *injunctive or*

---

[1] An injunction is a "judicial order that 'tells someone what to do or not to do.'" *Garland v. Gonzalez*, 596 U.S. 543, 549 (2022) (quoting *Nken v. Holder*, 556 U.S. 418, 428 (2009)). The court interprets Ms. Groce's requested relief of having Mr. Rodriguez, Ms. Montgomery, and Ms. Duncan disbarred or terminated as a form of injunctive relief.

5

*declaratory relief.*" *Id.* (emphases added).[2]  Because Ms. Groce is not, on the face of her complaint, seeking monetary damages, the FTCA and the Westfall Act are inapplicable.  The court thus declines to substitute the United States as the defendant under the Westfall Act.[3]

## B.  If Not the Westfall Act and FTCA, Then What?

Before the court, then, remain Ms. Groce's claims against Mr. Rodriguez, Ms. Montgomery, and Ms. Duncan in their official capacities as employees of the Gallery.[4]  Because Ms. Groce is seeking injunctive relief, this case is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*  The relevant section provides:

> An action in a court of the United States seeking relief *other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States.

*Id.* § 702.  This waiver of sovereign immunity for non-monetary relief extends beyond claims brought under the APA itself.  *See Chamber of Com. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) ("The APA's waiver of sovereign immunity applies to any suit whether under the APA or not.");

---

[2] To be sure, there are cases going the other way, *see Simpkins v. Shalala*, 999 F. Supp. 106, 119 (D.D.C. 1998); *Rader v. United States*, 20-CV-636, 2021 WL 2459795, at *6 (E.D.N.C. June 16, 2021), but the court is persuaded by the analysis in *Vanover*.

[3] In the absence of a Westfall Act certification, the court will construe the motion to dismiss as having been filed by Mr. Rodriguez, Ms. Montgomery, and Ms. Duncan.

[4] To the extent Ms. Groce seeks to sue Mr. Rodriguez, Ms. Montgomery, and Ms. Duncan in their individual, as opposed to official, capacities, "[i]t is well established that 'there is no basis for suing a government official for declaratory and injunctive relief in his or her individual or personal capacity.'" *Davidson v. U.S. Dep't of State*, 113 F. Supp. 3d 183, 194 (D.D.C. 2015), *aff'd*, 728 F. App'x 7 (D.C. Cir. 2018) (quoting *Hatfill v. Gonzales*, 519 F. Supp. 2d 13, 19 (D.D.C. 2007)); *see Vanover*, 77 F. Supp. 2d at 99 ("Courts have held that an award of injunctive relief, particularly where it seeks official action such as reinstatement, cannot be imposed on officials in their individual capacities.").  The court thus interprets her complaint—which does not specify whether she is proceeding against the named defendants in their individual or official capacities—as raising claims against the defendants in their official capacities only.

6

*see also, e.g.*, *Sea-Land Serv., Inc. v. Alaska R.R.*, 659 F.2d 243 (D.C. Cir. 1981) (Sherman Act); *Vanover*, 77 F. Supp. 2d at 94 (Fifth Amendment and tortious interference with employment). Despite its broad language, Section 702 is not an unqualified waiver of sovereign immunity. It applies only to an "agency or an officer or employee thereof." 5 U.S.C. § 702. Another provision of the APA defines "agency" as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency," and then lists several exceptions—Congress, the federal courts—that are not relevant here. *Id.* § 701(b)(1). Thus, to determine whether sovereign immunity for the Gallery Employees has been waived by Section 702, the court needs to assess whether the Gallery is an "authority of the Government of the United States" under Section 701(b)(1).[5]

The question whether a given federal entity is an "authority of the Government of the United States" has flummoxed many a court, because "[t]he law on the simple question of what is an agency is quite complex." *Lee Constr. Co. v. Fed. Reserve Bank*, 558 F. Supp. 165, 172 (D. Md. 1982) (quoting 1 K. Davis, *Administrative Law Treatise* § 1:2, at 3 (2d ed. 1978)); *see, e.g.*, *Soucie v. David*, 448 F.2d 1067, 1073 (D.C. Cir. 1971) (concluding that the Office of Science and Technology is an "agency" under the APA); *Clark v. Libr. of Cong.*, 750 F.2d 89, 102 (D.C. Cir. 1984) (concluding that the Library of Congress is not an "agency" under the APA); *Lombardo v. Handler*, 397 F. Supp. 792, 794-96 (D.D.C. 1975) (concluding that the National Academy of Sciences is not an "agency" under the Federal Advisory Committee Act, which shares the APA's definition of "agency"); *Schindler Elevator Corp. v. Wash. Metro. Area Transit Auth.*, 16 F.4th 294, 301 (D.C. Cir. 2021) (concluding that the Washington Metropolitan Area Transit Authority

---

[5] While the issue of sovereign immunity under the APA was not briefed by the parties, the court has an independent obligation to ensure that it has subject-matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

7

is not an "agency" under the APA); *Flaherty v. Ross*, 373 F. Supp. 3d 97, 110 (D.D.C. 2019) (concluding that the New England Management Fishery Council is not an "agency" under the APA).

The closest analogue this court can find is in *Dong v. Smithsonian Institution*, 125 F.3d 877 (D.C. Cir. 1997), where the D.C. Circuit concluded that the Smithsonian is not an "authority of the Government of the United States" when analyzing the question under identical language in another federal statute. *Id.* at 882-83. In *Dong*, the plaintiff pointed to the Smithsonian's significant connections with the federal government to argue that it was an "authority of the Government of the United States," including that it operates under a federal charter and receives federal funding, that most of its staff are federal employees, that it maintains limited police powers, and that it has limited rulemaking authority. *Id.* at 880, 882. Despite this "impressive array of links between the Smithsonian and the federal government," the Court deemed the relevant question to be whether the Smithsonian was actually exercising governmental authority. *Id.* at 880-81 ("[I]t seems logical that for an entity to *be* an authority of the government it must *exercise* some governmental authority."). On this score, the Court determined that the Smithsonian "does not make binding rules of general application or determine rights and duties through adjudication" and "issues no orders and performs no regulatory functions. *Id.* at 882. Instead, "[t]o the extent the Smithsonian exercises anything approaching public authority, that authority appears to be entirely ancillary to its cultural and educational mission." *Id.* That narrow authority was not sufficient to render the Smithsonian an "authority of the Government of the United States." *Id.* at 883.

The Gallery is similarly situated to the Smithsonian in all relevant aspects under *Dong*.[6] It receives federal funding, employs federal civil servants, and is authorized to exercise police powers and engage in rulemaking to the same extent as the Smithsonian. *See* 20 U.S.C. § 74(a) (federal appropriations), National Gallery of Art, *Working at the National Gallery*,[7] 40 U.S.C. § 6306 (police powers), *id.* § 6304 (rulemaking authority). But its federal authority, like the Smithsonian's, is purely ancillary to its mission as an art gallery. *See, e.g.*, 40 U.S.C. § 6304 (allowing the Trustees of the National Gallery of Art to "prescribe . . . regulations necessary for" its buildings and grounds). The Gallery "does not make binding rules of general application or determine rights and duties through adjudication," and "issues no orders and performs no regulatory functions." *Dong*, 125 F.3d at 882. Accordingly, the Gallery is not an "authority of the Government of the United States" and thus not an "agency" for purposes of the APA. 5 U.S.C. § 701(b)(1).

---

[6] Technically, by statute, the Gallery is a bureau of the Smithsonian Institution, but it is managed by an independent Board of Trustees. 20 U.S.C. § 72(a). Due to its independence from the rest of the Smithsonian, *Dong* is not dispositive of the question whether the Gallery is an "authority of the Government of the United States," but it is highly persuasive.

[7] *Available at* https://perma.cc/H62R-MVPF.

Because the Gallery is not an "agency" under the APA, there has been no waiver of sovereign immunity that would allow Ms. Groce to pursue her claims against the Gallery Employees.  Accordingly, Ms. Groce's complaint must be dismissed.[8]

## IV.  Conclusion

For the foregoing reasons, the court will grant the United States' motion and dismiss the case for lack of subject-matter jurisdiction.  A contemporaneous order will issue.

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

Date: August 1, 2024

---

[8] Because the court is dismissing the case on the basis of sovereign immunity, it need not consider the United States' other arguments in favor of dismissal.  However, the court will pause to note that even if the court had jurisdiction, it has no authority to grant the relief Ms. Groce seeks, which is an order having Mr. Rodriguez, Ms. Montgomery, and Ms. Duncan "disbarred" or "fired from their job[s]."  ECF No. 1.  Each state sets its own rules for bar membership and discipline, *see, e.g.*, *In re Moody*, 312 A.3d 1246, 1247 (D.C. 2024) (D.C. Court of Appeals ordering that an attorney be disbarred), and "[f]ederal courts lack jurisdiction to issue orders to a state court to act," *Price v. Porter*, No. 9-CV-176, 2009 WL 1210509, at *3 (W.D. La. May 1, 2009).  Nor does a federal court sit as a "super-personnel department" with authority to order an agency to terminate an employee.  *Diggs v. Potter*, 700 F. Supp. 2d 20, 50 (D.D.C. 2010) (quoting *Kelly v. Mills*, 677 F. Supp. 2d 206, 229 (D.D.C. 2010)).